**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Michael Hanson

    v.                                        Civil No. 11-cv-534-PB

Stephen Church, Superintendent,
Rockingham County House of
Corrections, et al.[1]

## REPORT AND RECOMMENDATION

Before the court is Michael Hanson's complaint (doc. no. 1)
and addendum to the complaint (doc. no. 8).[2]  Also before the
court are plaintiff's "Motion to Reconsider and Request for
Immediate Relief" (doc. no. 4), "Motion for Clarification" (doc.
no. 10), and a second "Motion for Clarification" (doc. no. 15).
These motions are addressed in this report and recommendation

---

[1]In addition to Church, Hanson has named the following
defendants to this action: Rockingham County House of
Corrections ("RCHC") Assistant Superintendent John Blomeke; RCHC
Lt. Horne (first name unknown ("FNU")); RCHC Lt. FNU Consentino;
RCHC Corrections Officer ("CO") FNU Trainor; RCHC CO FNU
Hazleton; PrimeCare Medical ("PCM"); PCM Physician's Assistant
Spencer Mead; PCM Nurse Niki (last name unknown ("LNU")); PCM
Nurse Judy LNU; and PCM Nurse Jane Doe.

[2]Hanson's initial pleading (doc. no. 1), titled "Petition
for Expedited Writ of Habeas Corpus," construed and docketed by
the court as a complaint filed pursuant to 42 U.S.C. § 1983, see
Doc. No. 2, as well as Hanson's filing titled "Verified
Complaint" (doc. no. 8), are considered to be, in the aggregate,
the complaint in this matter for all purposes.

and in an order issued simultaneously with this report and recommendation (hereinafter the "Simultaneous Order").

Plaintiff has also filed a "Renewed Motion for Preliminary Injunctive Relief" (doc. no. 16).  That motion repeats plaintiff's previously filed requests for preliminary injunction, which are pending before the court, and also appears to add an additional claim for relief.  To the extent Hanson seeks to amend his complaint to include an additional claim, the court grants the motion in the Simultaneous Order.  Plaintiff's repeated requests for injunctive relief are also addressed herein.

Hanson is a pretrial inmate at the Rockingham County House of Corrections ("RCHC"), who alleges that his federal constitutional and state law rights have been violated by RCHC employees and employees of PrimeCare Medical ("PCM"), the organization that provides medical services to inmates at the RCHC.[3]  The matter is before the magistrate judge for preliminary review to determine whether the complaint states any claim upon

---

[3]Hanson has requested preliminary injunctive relief in this matter.  That request has been referred to this court for consideration and a recommendation as to disposition (doc. no. 5).  A hearing was previously set for December 13, 2011, but has been continued by the court pending receipt of Hanson's response to an order to amend issued simultaneously with this report and recommendation.  The court does not at this time make any recommendation regarding Hanson's request for preliminary injunctive relief.

which relief might be granted.  See 28 U.S.C. § 1915A(a); United
States District Court for the District of New Hampshire Local
Rule ("LR") 4.3(d)(2).

### Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff
commences an action pro se, the magistrate judge conducts a
preliminary review.  The magistrate judge may issue a report and
recommendation after the initial review, recommending that
claims be dismissed if the court lacks subject matter
jurisdiction, the defendant is immune from the relief sought,
the complaint fails to state a claim upon which relief may be
granted, the allegation of poverty is untrue, or the action is
frivolous or malicious.  See id. (citing 28 U.S.C. § 1915A &
Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review,
the magistrate judge construes pro se pleadings liberally, to
avoid inappropriately stringent rules and unnecessary
dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per
curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976),
to construe pleadings liberally in favor of pro se party);
Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which
relief could be granted, the court applies a standard analogous

to that used in reviewing a motion to dismiss filed under Fed.
R. Civ. P. 12(b)(6).  The court decides whether the complaint
contains sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face.  See Ashcroft v.
Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged
approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1,
12 (1st Cir. 2011).  The court first screens the complaint for
statements that "merely offer legal conclusions couched as fact
or threadbare recitals of the elements of a cause of action."
Id. (citations, internal quotation marks and alterations
omitted).  A claim consisting of little more than "allegations
that merely parrot the elements of the cause of action" may be
dismissed.  Id.  The second part of the test requires the court
to credit as true all non-conclusory factual allegations and the
reasonable inferences drawn from those allegations, and then to
determine if the claim is plausible.  Id.  The plausibility
requirement "simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence" of illegal
conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).
The "make-or-break standard" is that those allegations and
inferences, taken as true, "must state a plausible, not a merely
conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of

4

Educ., 628 F.3d 25, 29 (1st Cir. 2010); see also Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

## Discussion

I.  Mental Health Care

Hanson alleges that he has been denied "virtually any mental health care" for a number of serious mental illnesses, including Depression, Obsessive/Compulsive Disorder, Borderline Personality Disorder, Anti-Social Personality Disorder, and Narcissistic Personality Disorder.  Hanson has received Social

Security Disability Insurance as a result of these mental illnesses.  Hanson states that his mental health treatment at the RCHC has been limited to a few brief visits with a mental health worker which provided him little or no benefit.  As a result of the denial of any adequate care, Hanson states that he has developed an additional mental illness, Post-Traumatic Stress Disorder.  Hanson asserts that the failure of defendants to provide him with adequate mental health care may result in Hanson's "completed suicide."

Hanson states that he has grieved the refusal to provide necessary treatment for his serious mental health issues to health care providers and supervisors at the RCHC, including RCHC Superintendent Stephen Church, RCHC Assistant Superintendent John Blomeke, PCM, and PCM nurse Jane Doe. Hanson has also filed a state habeas petition concerning this issue, which was denied.

A pretrial detainee's right to adequate medical care during his incarceration arises under the Fourteenth Amendment's Due Process Clause.  See Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005) (explaining that parameters of pretrial detainees' prison condition claims arising under the Fourteenth Amendment are coextensive with the protection a convicted inmate receives

under the Eighth Amendment).[4]  In order to state a constitutional
claim for the denial of mental health care, or other medical
care, an inmate must allege that defendants have committed "acts
or omissions . . . sufficiently harmful to evidence deliberate
indifference to serious medical needs."  Leavitt v. Corr. Med.
Servs., 645 F.3d 484, 497 (1st Cir. 2011) (internal quotations
and citation omitted); see also Farmer v. Brennan, 511 U.S. 825,
834 (1994) (plaintiff's claim of constitutional violation must
meet both objective and subjective criteria).

Here, Hanson has alleged that he has serious mental
illnesses, and that he has sought, and been denied, "virtually
any" care for those conditions by PCM and Nurse Doe.  Further,
Hanson alleges that Church and Blomeke, the officials with
overall responsibility for inmate health care at the RCHC,
failed to take action to insure that he received mental health
care.  Hanson has failed to allege specific facts, however,
which demonstrate that the named defendants were aware of the
severity of his mental illness, that they were aware of his need
for more treatment than he received, as opposed to simply his
request for treatment, and that they denied him treatment

_____

[4]Hanson asserts that some of his claims arise under the
Eighth Amendment's prohibition on cruel and unusual punishment.
The Eighth Amendment protects only sentenced inmates, however,
and the court therefore construes Hanson's Eighth Amendment
claims as arising under the Fourteenth Amendment.

adequate to meet his needs.  Further, while Hanson states that
failing to treat severe depression could result in "completed
suicide," he has not alleged that at any time during his
incarceration he was, in fact, suicidal, or that if he was, that
the named defendants were aware of and disregarded that risk to
his health and safety.  Accordingly, in the Simultaneous Order,
the court provides Hanson with the opportunity to amend his
complaint to state, with specificity, facts to demonstrate that
each of the named defendants was specifically aware of a
substantial risk to his health and safety, and that he or she
disregarded that risk by denying Hanson adequate mental health
care.

II.  <u>Medical Care</u>

    Hanson states that he has been deprived of adequate medical
care at the RCHC.  Hanson claims that the deprivation of
adequate medical care has contributed to permanent damage to his
lower back muscles, his right hip, and his right shoulder.
Hanson further claims that he has high cholesterol, and that
RCHC and PCM employees have refused to provide him with
medication to treat his high cholesterol.  If left untreated,
Hanson asserts that his high cholesterol could cause him to have
a stroke or a heart attack.

Hanson states that on May 13, 2011, PCM Physician's
Assistant Spencer Mead neglected to properly notify RCHC staff
of medical orders that had been put in place restricting Hanson
from using the gym or participating in sports, working, and from
using a top bunk.  As a result Hanson states that RCHC CO
Trainor required him to continue to use a top bunk for five
weeks after the orders had issued.  Hanson states that as a
result, he suffered permanent damage to his lower back muscles.
Hanson alleges that he has made Church, Blomeke, PCM, Mead,
Nurse Niki, Nurse Judy, and Nurse Jane Doe aware of his need for
medical care and, acting individually and in conspiracy with one
another, those defendants have failed to provide him with
adequate medical care for his serious medical problems.

"A medical need is serious if it is one that has been
diagnosed by a physician as mandating treatment, or one that is
so obvious that even a lay person would easily recognize the
necessity for a doctor's attention." Gaudreault v. Mun'y of
Salem, 923 F.2d 203, 208 (1st Cir. 1990) (internal quotations
and citation omitted).  While Hanson asserts that he has certain
medical problems, and that he was given a lower bunk pass
because of back muscle issues, the record is scant in its
description of the nature and severity of his medical problems.

Hanson's complaint does not contain sufficient information to allow the court to find that his medical conditions were serious, that Hanson required treatment, or that the named defendants to this claim were aware of Hanson's serious medical problems, and refused or denied Hanson treatment.  However, since the medical problems alluded to are potentially serious, Hanson will be provided with an opportunity to amend his complaint to assert facts to demonstrate that he had serious medical needs that required treatment to avoid a substantial risk to his health and safety, and that defendants were aware of and disregarded that risk.

III. Dental Health Care

Hanson states that he has been deprived of adequate dental care at the RCHC.  Hanson claims that as a result of the deprivation of dental care, he believes that he has developed permanent jaw damage.  Hanson has not stated what serious dental needs he had that required attention.  Further, Hanson has not stated who at the RCHC was aware of his serious condition and disregarded that condition in a manner evincing deliberate indifference to his dental health and safety.

Because Hanson has stated that he had dental problems severe enough to cause jaw damage when left untreated, he has

alleged that he has suffered from potentially serious dental problems at the RCHC.  Accordingly, Hanson will be provided with an opportunity to amend his complaint to assert facts to demonstrate a serious dental need requiring treatment to avoid a substantial risk to his health and safety, and to demonstrate that defendants were aware of and disregarded that risk.

IV.  Denial of Access to the Courts

Hanson states that RCHC Lt. Consentino was responsible for providing inmates with access to the RCHC law library, legal reference materials, and the law computer.  Hanson claims that the legal materials and resources at the RCHC are inadequate, and that policies governing access to the materials are "confusing and unnecessarily restrictive."  Hanson claims that he has been adversely affected by such policies, but does not specify the manner in which he has been so impacted.  Further, Hanson asserts that Church, Blomeke, and Consentino are responsible for denying him access to the courts, but he has not stated what each of the defendants did to deny him that access.

"[P]risoners have a constitutional right of access to the courts."  Bounds v. Smith, 430 U.S. 817, 821 (1977).  To provide adequate access, prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing

prisoners with adequate law libraries or adequate assistance
from persons trained in the law." Id. at 828 (footnote
omitted).  To state a claim that he has been denied such access,
an inmate must allege more than a lack of legal research
materials or assistance, but must also assert facts that
"demonstrate that the alleged shortcomings in the library or
legal assistance program hindered his efforts to pursue a legal
claim." Lewis v. Casey, 518 U.S. 343, 351 (1996).  To
demonstrate such a hindrance, the inmate must show "that an
actionable claim has been lost or rejected or that presentation
of the claim is currently being prevented." Guglielmo v. N.H.
State Prison, 111 F.3d 122, *1 (1st Cir. 1997) (unpublished
table decision) (citing Lewis, 518 U.S. at 356).

　　While Hanson states that he has been adversely affected by
the lack of access to legal materials at the RCHC, he has failed
to provide this court with specific facts demonstrating that he
has actually been hindered in the pursuit of a legal action that
he is constitutionally entitled to pursue.  Accordingly, Hanson
will be given the opportunity to amend his complaint to assert
specific facts to demonstrate such a hindrance.  To pursue this
claim, Hanson must assert facts indicating, with specificity,
what each of the defendants did that caused him to be denied

access to the courts, what he was denied, and how that denial
caused a detriment to a case in which Hanson is involved.

V.   Strip Search/Sexual Harassment

Hanson alleges that on April 13, 2011, he was required to
remove his clothing and undergo fifteen seconds of visual
inspection by RCHC CO Hazleton.  Hanson claims that there was no
justification for the search, and that Hazleton had Hanson
undress for the purposes of Hazleton's sexual gratification.

A.   Strip Search

"[C]onvicted prisoners and pretrial detainees retain
constitutional rights despite their incarceration, including
basic Fourth Amendment rights against unreasonable searches and
seizures." Roberts v. Rhode Island, 239 F.3d 107, 109 (1st Cir.
2001) (citing Bell v. Wolfish, 441 U.S. 520, 545 (1979)).  The
First Circuit has applied the balancing test set forth in Bell
to evaluate the reasonableness of a strip search or visual body
cavity search, in the prison context.  See Roberts, 117 F.3d at
110 (citing Bell, 441 U.S. at 545-46).  The court must thus
balance "the need for the particular search against the invasion
of personal rights that the search entails," considering "the
scope of the particular intrusion, the manner in which it is
conducted, the justification for initiating it and the place in

which it is conducted." Bell, 441 U.S. at 559; see also United States v. McGhee, 627 F.3d 454, 457 (2010) (sentence vacated on unrelated grounds at 651 F.3d 153 (1st Cir. 2011)) ("as a search extends beyond a pat down and the removal of outer garments, shoes and socks, the case law has required increasing justification for more intrusive measures"); Swain v. Spinney, 117 F.3d 1, 7 (1st Cir. 1997) (officers must have reasonable suspicion that particular detainee is in possession of contraband before conducting strip search).

Hanson states that the April 13, 2011, search was conducted in private.  Hanson does not assert that he was required to assume any particularly humiliating or undignified position during the alleged strip search.  The search described, however, requiring Hanson to strip naked and be subjected to visual scrutiny, is still invasive of Hanson's privacy.[5]  As such, to determine whether Hanson can state a claim for relief under the Fourth Amendment, the court must assess whether the invasion of privacy alleged is justified by any facts appearing in the complaint.

---

[5]The First Circuit has defined a "strip search" as a visual inspection of the inmate's naked body, and a "visual body cavity search" as a search that includes "the visual examination of the anal and genital areas."  Roberts, 239 F.3d at 108 n.1. Applying that definition here, the visual inspection described by Hanson is a "strip search" and not the more invasive "body cavity search."

Hanson asserts that when he was strip searched, he was being escorted from the library to his housing unit.  Hanson makes the bald assertion that he was searched solely for the purpose of Hazelton's sexual gratification.  Hanson's complaint contains no indicia of any reason for Hazleton to suspect that Hanson was in possession of contraband.  Generously construing Hanson's factual allegations, and taking them as true, as the court must at this stage of the proceedings, the court finds that Hanson has alleged that he was subject to a strip search that, while limited in scope, was without any justification. Accordingly, the court finds that the invasion of Hanson's privacy, as alleged, was not balanced by any legitimate interest.  Hanson has therefore stated a Fourth Amendment claim alleging an unreasonable strip search.  In the Simultaneous Order, the court will direct service of the complaint on Hazleton.

    B.   <u>Sexual Harassment</u>

Hanson further claims that the strip search subjected him to harassment that amounted to punishment, in violation of his due process right not to be subjected to punishment as a pretrial detainee.  Hanson alleges that the strip search by Hazleton was a pretense, in that Hazleton told Hanson to remove

15

his pants and underwear and stared at Hanson's genitalia for fifteen seconds for Hazleton's own sexual gratification.  Hanson claims that this act constituted sexual exploitation or harassment.  If true, Hanson alleges deplorable and highly unprofessional conduct by Hazleton.  To state a claim that Hazleton violated Hanson's due process rights by those actions, however, Hanson must allege facts that demonstrate that Hazleton's actions were "objectively, sufficiently serious" to violate the Constitution, and that Hazleton acted with deliberate indifference to the plaintiff's "rights, health or safety" with a "sufficiently culpable state of mind."  See Chao v. Ballista, 772 F. Supp. 2d 337, 347 (D. Mass. 2011) (citing Farmer, 511 U.S. at 834).

The complaint does not at this time assert any facts, except the absence of justification for the search, to support Hanson's opinion that the search violated his due process rights.  The complaint describes a search that was limited in scope and duration, not extraordinarily humiliating in nature or manner, and that occurred on only one occasion.  The complaint lacks specific facts from which the court can draw an inference that Officer Hazleton acted with a "culpable state of mind." See Chao, 772 F. Supp. 2d at 347.  Accordingly, Hanson has not at this time stated sufficient facts to assert a section 1983

claim for sexual harassment. However, because of the alleged
lack of a legitimate justification for the search, Hanson will
be given the opportunity to amend his complaint, as directed in
the Simultaneous Order, to include facts in his complaint which
would support a claim that the intrusion on his privacy was
objectively sufficiently serious to constitute punishment, and
that Hazleton acted with the intent to punish him.

VI.  <u>Verbal Harassment</u>

Hanson asserts that Trainor and other named defendants
verbally harassed him while he was at the RCHC. Hanson further
asserts that Trainor allowed inmates to verbally harass him.

Verbal harassment of inmates by corrections officers does
not violate any constitutional right. See <u>Shabazz v. Cole</u>, 69
F. Supp. 2d 177, 200-01 (D. Mass. 1999) (collecting cases)
(without more, verbal harassment does not violate inmate's
rights under the Fourteenth Amendment); <u>cf.</u> <u>Skinner v.
Cunningham</u>, 430 F.3d 483, 489 (1st Cir. 2005) (harassment
including slamming of inmate's cell door, threats,
discourtesies, epithets, and false charges on petty matters do
not violate Eighth Amendment). Accordingly, Hanson's claim that
Trainor engaged in or tolerated verbal harassment should be
dismissed.

VII. Endangerment

Hanson states that during his incarceration at the RCHC, he was subject to threats of physical violence by other inmates. After Hanson complained about being threatened by the inmates, CO Trainor told the inmates in question that Hanson had complained specifically about them to authorities.  As a result, the inmates became increasingly angry and threatening toward Hanson.  Hanson claims that by labeling Hanson as a snitch, Trainor jeopardized Hanson's safety at the RCHC.  Hanson is in constant fear of assault by other inmates.

The constitution requires prison officials to take "reasonable measures to guarantee the safety of the inmates, including protecting prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 832-33.  To establish an endangerment claim, an inmate must assert facts to demonstrate that, objectively, he is incarcerated "under conditions posing a substantial risk of serious harm," and that the involved prison officials knew of and disregarded an excessive risk to the inmate's safety.  Id. at 834.  An inmate does not have to wait to be attacked to assert a constitutional claim of endangerment; he can base a claim on an allegation that he has been subjected to possible future harm, but to do so he must also show that he has been subjected to a risk of "'sufficiently imminent

danger[]'" that is "'<u>sure or very likely</u>'" to cause harm.  <u>Baze</u>
<u>v. Rees</u>, 553 U.S. 35, 50 (2008) (emphasis in original) (quoting
<u>Helling v. McKinney</u>, 509 U.S. 25, 33-34 (1993).  To prevail,
such a claim must present an "'objectively intolerable risk of
harm.'"  <u>Baze</u>, 553 U.S. at 50 (quoting <u>Farmer</u>, 511 U.S. at 846).

Here, Hanson's written complaint put Trainor on notice that
inmates were threatening to harm Hanson.  Trainor then told
those inmates that Hanson had filed a written complaint about
their behavior.  The court can reasonably infer that Trainor, as
a corrections officer, is generally aware that being labeled as
a "snitch" in a prison context might well put an inmate at risk
of harm from other inmates.  Further, courts have recognized
such a risk.  <u>See</u> <u>Kelley v. Wall</u>, No. C.A.10-233 ML, 2010 WL
5176172, *3 (D.R.I. Nov. 30, 2010) (citing cases to support the
proposition that being labeled a snitch in prison endangers
inmate safety).

Hanson states that the inmates who were threatening him
became angrier and more vocal after learning that Hanson had
complained about the threats.  Hanson has not demonstrated,
however, that when Trainor told the inmates about Hanson's
complaints, Hanson was subjected to an actual risk of imminent
danger, very likely to cause harm.  <u>See</u> <u>Baze</u>, 553 U.S. at 50.
To the contrary, Hanson states that after he complained about

the treatment he was receiving from other inmates on his unit, he was removed from that housing unit.  Accordingly, Hanson has failed to allege sufficient facts to demonstrate that he has been endangered by Trainor's acts, and the claim should be dismissed.

VIII. <u>Retaliation Claims</u>

    A.   <u>Grievances</u>

Hanson asserts that he filed a grievance against Trainor for endangerment.  As a result, he asserts that he was "severely retaliated against . . . especially by the medical staff at PCM, and particularly by Defendant Nurse Judy."

On June 28, 2011, Hanson handed a nurse a written statement of his intent to engage in a hunger strike in protest of the retaliation to which he was subjected for filing a grievance against Trainor.  Hanson was immediately placed on "Level 1" suicide watch and was accordingly handcuffed, taken to a single cell in the RCHC booking area, strip searched, and left in the cell with the lights left on for nine days.

During the nine days Hanson spent on suicide watch, he was not provided with any possessions in the cell except a mattress, a pair of sandals, a religious text, and a one-piece orange jumpsuit, which he was made to wear without undergarments.

Further, Hanson was not provided with daily clothing changes, showers, or opportunities to brush his teeth, and was not given soap with which to wash his hands before eating or after using the toilet.  During the nine days on suicide watch, Hanson was permitted one phone call, and was given one envelope, one piece of paper, and five minutes' use of a pencil to write one letter.

Hanson claims that he only skipped one meal on June 28, and that he had repeatedly advised PCM staff that he was not suicidal, and asked to be removed from suicide watch and returned to his normal housing unit.  Hanson claims that defendants' placing him on suicide watch and failing to return him to his housing unit for nine days was retaliation for his exercising his First Amendment right to file grievances and to otherwise seek redress of grievances by engaging in a hunger strike.

The First Amendment shields prisoners from retaliation in response to their engaging in protected speech.  Ortiz v. Jordan, ___ U.S. ___, ___, 131 S. Ct. 884, 893 (2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)).  In order to state a claim for retaliation for the exercise of his First Amendment rights, Hanson must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment; (2) some adverse action at the hands of the prison officials;

21

and (3) a causal link between the exercise of his First
Amendment rights and the adverse action taken.  See Hannon v.
Beard, 645 F.3d 45, 48 (1st Cir. 2011).

Hanson has a First Amendment right to file grievances and
administrative complaints regarding the conditions of his
confinement.  See id. (inmate, in "filing his own grievances and
legal actions, plainly engaged in protected activity" (footnote
omitted)).  It is not clear that a prisoner has a First
Amendment right to engage in a refusal to eat, even if that
refusal is an act of protest.  See Freeman v. Berge, 441 F.3d
543, 546 (7th Cir. 2006) (collecting cases holding either that
prisoners do not possess a liberty interest in engaging in a
hunger strike, or that such an interest is easily overridden by
prison officials' interest in not allowing an inmate to starve
himself to death).  Because, as discussed below, Hanson's
retaliation claim fails on other grounds, the court need not
decide whether, in this instance, Hanson's stated intent to
engage in a hunger strike was a protected act.

Hanson states that he was subjected to unpleasant
conditions of confinement.  Hanson does not state, however, that
any of those conditions were inhumane or actually harmful to
him.  The conditions described, even if unpleasant, lasted for
only nine days.  As alleged, the conditions amount to de minimis

22

adverse acts insufficient to support a retaliation claim.[7]

Hanson's retaliation claim should therefore be dismissed.  <u>See</u>

<u>Pope v. Bernard</u>, No. 10-1443, 2011 WL 478055, *2 (1st Cir. Feb.

10, 2011) ("In regard to retaliation that violates the First

Amendment, a prisoner, to succeed on such a claim, must

establish . . . a retaliatory adverse act that is more than <u>de</u>

<u>minimis</u>." (citation omitted)).

The court need not reach the issue of the motivation of

RCHC officials in placing Hanson on suicide watch, as he has

failed to demonstrate an adverse act.  The court does note,

however, that Hanson threatened to refuse all food until such

time as he was moved to another correctional facility.  In

general, the court would not find unreasonable a prison

official's medical decision to place an inmate on suicide watch

after he had stated his intention to engage in self-injurious

behavior.

---

[7]Hanson has not asserted an independent claim in this action
complaining of the conditions of his confinement in suicide
watch, other than to state that subjection to those conditions
constituted an "adverse act" for purposes of his retaliation
claim.  Even if Hanson had raised such a claim, however, the
allegations in the complaint do not demonstrate that the
unpleasant conditions were either inhumane or were the product
of an intent to improperly punish Hanson.  Accordingly, the
facts alleged would not support a cognizable constitutional
challenge to the conditions of Hanson's confinement in suicide
watch.  <u>See</u> <u>Bell</u>, 441 U.S. at 538-39 and nn. 19, 20.

B.   Lawsuit

In addition to having a First Amendment right to file administrative grievances, prisoners have a First Amendment right to file a lawsuit complaining of the conditions of their confinement.  See Ortiz, ___ U.S. at ___, 131 S. Ct. at 884; Hannon, 645 F.3d at 48.  Hanson claims that since he initially filed this lawsuit, he has been retaliated against by being placed in "the hole."  Hanson claims that his placement in the hole was pursuant to a minor disciplinary infraction (blocking a vent by hanging socks to dry in front of it) and a subsequent refusal to eat.  Hanson asserts that these reasons were pretextual, however, and that the real reason he was placed in the hole was to retaliate against him for filing this lawsuit.

For the same reasons that the court did not find that Hanson stated a retaliation claim for being placed on suicide watch, the court now finds that he has not stated a retaliation claim for being placed in the hole.  No facts in the complaint support that he was subjected to adverse conditions severe enough in nature or duration to deter an inmate of reasonable firmness from filing a lawsuit.  Further, no facts, aside from Hanson's bald assertions, connect his placement in the hole to any retaliatory intent by any employee at the RCHC.

Accordingly, Hanson has failed to state a claim that he was retaliated against for filing this action.

IX.  Conspiracy

Hanson alleges that the defendants in this action acted to violate his constitutional rights both individually and in concert with one another.  Hanson appears to claim, therefore, that the defendants were engaged in a conspiracy to violate his rights.  In order to state a civil rights conspiracy claim, however, a plaintiff must assert "an actual deprivation of a right secured by the Constitution and laws" of the United States.  See Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006). To date, Hanson has failed to assert an actionable violation of his federal constitutional rights.  Further, aside from his bald assertion that the defendants acted in conspiracy with one another, Hanson has not asserted any facts to support the existence of such a conspiracy.  Accordingly, Hanson has failed to state any actionable claim for conspiracy, and those claims should be dismissed from this action.

X.  Claims Insufficiently Stated

Hanson fleetingly invokes several causes of action, alleging: a violation of his equal protection rights; libel; slander; invasion of privacy; "shock"; and assault.  Hanson has

failed to provide any factual support for those claims and they should therefore be dismissed.

XI.  Criminal Claims

Hanson asserts that his rights have been violated because he has been subjected to criminal conduct by the defendants, whom he alleges committed the criminal offense of "official oppression" against him, in violation of N.H. Rev. Stat. Ann. 643:1, and that no action has been taken to prosecute those defendants criminally.  There is no cause of action under § 1983, however, for the failure to prosecute a crime, as there is no federal constitutional right to have criminal wrongdoers brought to justice.  See Leeke v. Timmerman, 454 U.S. 83, 87 (1981); Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")).  Hanson cannot, therefore, state a claim for a failure to prosecute someone, and that claim should be dismissed.

XII. State Law Claims

This court has supplemental jurisdiction over state law claims that arise out of the same case or controversy as federal

claims properly before the court.  See 28 U.S.C. § 1367.  Hanson

has, to date, failed to state any viable federal claim for

relief.  Accordingly, the court recommends that Hanson's state

law claims be dismissed without prejudice to being raised should

Hanson successfully amend his complaint to state a federal

claim, and should he also successfully allege facts to support a

specific state law claim arising out of the same case or

controversy as any viable federal claims.

XIII.  Requests for Preliminary Injunctive Relief

      As noted above, Hanson has made numerous requests for

preliminary injunction relief, seeking either release or

transfer from the RCHC to another facility (doc. nos. 1, 4, 8,

15 and 16).  A hearing was initially scheduled on Hanson's

request based on the indication in his initial filing that he

was at a risk of suicide (doc. no. 6).  Prior to the hearing,

Hanson filed additional documents that indicated that he is not

suicidal, but that continued to press Hanson's request for a

preliminary injunction based on allegedly inadequate mental

health care and other conditions of his confinement at the RCHC.

The court then continued the hearing pending review of the

additional filings to determine whether holding a hearing was

appropriate given the assertions in those filings (doc. no. 12).

To obtain preliminary injunctive relief, a plaintiff must demonstrate: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008) (quotation marks and citations omitted). Preliminary injunctive relief is available to protect the moving party from irreparable harm, so that he may obtain a meaningful resolution of the dispute after full adjudication of the underlying action.  See Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007).

As discussed herein, the claims upon which plaintiff bases his request for injunctive relief have not, at this time, been sufficiently stated to assert a plausible basis for relief. Hanson will therefore, in the Simultaneous Order, be granted leave to amend his request for a preliminary injunction to assert specific facts demonstrating that he is able to satisfy each of the necessary elements to obtain preliminary injunctive relief, as set forth above.

**Conclusion**

For the foregoing reasons, the court recommends that the following claims be dismissed for failing to state any claim upon which relief might be granted: verbal harassment; endangerment; retaliation; conspiracy; equal protection; libel; slander; invasion of privacy; "shock"; and assault.  The court further recommends that the state law claims in the complaint alleging medical malpractice and the intentional and negligent infliction of emotional distress be dismissed without prejudice to refiling should Hanson amend his complaint to state viable federal claims arising out of the same case or controversy.

In the Simultaneous Order, the court directs Hanson to amend his complaint to assert facts to support his claims that he has been denied adequate medical, mental health, and dental care; that he has been denied access to the courts; and that he has been unconstitutionally sexually harassed, and that he is entitled to preliminary injunctive relief.  In the Simultaneous Order, the court also directs service of the action against Hazleton, as Hanson has stated a Fourth Amendment strip search claim against Hanson upon which relief might be granted.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  <u>See</u> Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the

specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011) (citing United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008)); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).



_____
Landya B. McCafferty
United States Magistrate Judge


Date:  January 12, 2012

cc:  Michael Hanson, pro se


LBM:jba