**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Michael Hanson

    v.                                   Civil No. 11-cv-534-SM

Stephen Church, Superintendent,
Rockingham County House of
Corrections, et al.



**REPORT AND RECOMMENDATION**


    Before the court are the factual allegations and claims
asserted in pro se plaintiff Michael Hanson's motion to amend
and supplement his complaint (doc. no. 39).  The motion was
filed by Hanson while he was incarcerated at the Rockingham
County House of Corrections ("RCHC").[1]   The factual allegations
and claims asserted in the motion are before this magistrate
judge for a preliminary review to determine whether the motion
states any claim upon which relief might be granted.  See United
States District Court District of New Hampshire Local Rule
("LR") 4.3(d)(2).  In the order issued on this date, the court
has granted the motion (doc. no. 39), and has directed that the
federal constitutional claim set forth in the motion, arising
out of an allegedly unreasonable search conducted on March 13,

_____

[1]Since the filing of this motion, plaintiff has been
released from custody.

2012, be served on defendant RCHC Corrections Officer ("C.O.")
Lennon.  In this report and recommendation, the court recommends
that the other claims asserted in the motion (doc. no. 39) be
dismissed, and that all defendants named by Hanson, except for
C.O. Lennon and C.O. Haseltine, be dismissed from this case, as
Hanson has failed to state any actionable claim against them.[2]

**Background**

Hanson filed a complaint (doc. no. 1) on November 16, 2011,
and an amendment to the complaint (doc. no. 8) on December 6,
2011.  The court construed those documents collectively to
constitute the "complaint," and directed Hanson to amend the
complaint as to certain claims (alleging violations of his right
to adequate mental, medical, and dental health; denial of access
to the law library; and sexual harassment).  See Order (doc. no.
18).  The court also ordered service of one claim (alleging an
unreasonable strip search) on RCHC Corrections Officer ("C.O.")
George Haseltine.  See Order (doc. no. 18).

In a subsequent order, the court extended the deadline for
Hanson to file his amended complaint until March 1, 2012.  See

---

[2]The defendants named by Hanson who should be dismissed from
the case are RCHC Supt. Stephen Church; Asst. Supt. John
Blomeke, Lt. Horne; Lt. Consentino; C.O. Trainor; PrimeCare
Medical, Inc.; Physician's Assistant Spencer Mead; Nurse Nichole
Strachan; Nurse Judy; Nurse Jane Doe; and Tracie Long.

Order (doc. no. 27).  Hanson failed to file an amended complaint
by that deadline, and instead appealed the court's order
approving the report and recommendation, which resulted in the
dismissal of some but not all claims in this case.  <u>See</u> Notice
of Appeal (doc. no. 32).  The First Circuit dismissed Hanson's
appeal on July 3, 2012.  <u>See</u> <u>Hanson v. Haseltine</u>, No. 12-1282
(1st Cir. July 3, 2012).

In the meantime, on April 9, 2012, Hanson filed the instant
motion to amend (doc. no. 39), seeking to dismiss Nurse Judy LNU
as a defendant from this action, and to amend his claim for a
denial of adequate medical care, adding Tracie Long as a
defendant to that claim.  Hanson also seeks to add five
additional RCHC employees as defendants who have not been
previously named as defendants in this action, and asserts new
claims against these additional defendants arising out of events
occurring after the complaint was filed.[3]

---

[3]Hanson's motion to amend, to the extent it seeks to raise
claims arising out of events occurring after the commencement of
this action, is more in the nature of a motion to supplement the
complaint filed pursuant to Fed. R. Civ. P. 15(d) than an
amendment to the complaint.  <u>See</u> Fed. R. Civ. P. 15(d).  In the
order issued simultaneously with this report and recommendation,
the court directs that the motion be redocketed as a "motion to
amend and supplement the complaint."

**Discussion**[4]

## I.   Claims in Complaint Not Addressed in Motion

In the motion to amend and supplement (doc. no. 39), Hanson has not attempted to amend his claims concerning mental health care, dental care, law library access, or sexual harassment. Accordingly, the court now recommends that those claims be dismissed from this action, as insufficient to state any claim upon which relief might be granted.  See 28 U.S.C. § 1915A(a); LR 4.3(d)(2)((A).  Further, the court recommends that all of the defendants named in the initial complaint documents (doc. nos. 1 and 8), except C.O. Haseltine, be dismissed from this action.

## II.  Medical Care

### A.   Facts

In the instant motion, Hanson asserts the following facts in support of his claim that he was denied adequate medical care at the RCHC.  Hanson requested that the RCHC medical department allow him to take his morning medication, Lisonopril to treat high blood pressure, and a multivitamin, at a different time. Hanson stated he would prefer not to take them at all than to

---

[4]The court, in considering whether Hanson has stated any claim upon which relief can be granted, applies the standard for conducting a preliminary review that is set forth in the January 12, 2012, report and recommendation.  That standard need not be reiterated here.

have to wake up to do so.  In response, Hanson asserts that Long "deliberately cancelled and re-ordered all of [Hanson's] medications on 8/29/2011 and 8/31/2011 . . . in an attempt to skew [Hanson's] compliance rate for the purpose of cancelling such medications, which was done on 9/23/2011, for 'non-compliance.'"  Hanson's medical records,[5] as well as the medical request slip submitted with the instant motion, indicate that Long discontinued Hanson's Lisonopril prescription and multivitamin on August 29, 2011, but reordered both on August 31, 2011.  Another medical provider discontinued the Lisonopril on September 23, 2011, citing Hanson's noncompliance.[6]  In lieu of blood pressure medication, Hanson's blood pressure was checked weekly for four weeks.  The records reflect that Lisonopril was reordered for Hanson on November 24, 2011.  It appears from the records that Hanson was provided with other medications during the time period relevant to this claim.

---

[5]The motion to amend and supplement (doc. no. 39) refers to Hanson's medical records.  In conducting its preliminary review of the allegations in the motion, the court has reviewed the medical records defendants served upon Hanson and submitted to this court under seal for use in a hearing that was subsequently cancelled.  See Order (doc. no. 6) (directing defendants to submit medical records to court under seal and to provide such records to plaintiff).

[6]It is not clear whether the multivitamin was continued on September 23, 2011, but the question need not be resolved as it is not material to the court's recommendation in this matter.

Hanson does not report any ill effects as a result of the
challenged discontinuation of either his medications or the
multivitamin.

    B.   <u>Analysis</u>

Hanson asserts that Long deprived him of constitutionally
adequate medical care by causing Hanson's medication to be
improperly discontinued.  In order to state a constitutional
claim for the denial of constitutionally adequate medical care,
an inmate must allege that defendants have committed "acts or
omissions ... sufficiently harmful to evidence deliberate
indifference to serious medical needs."  <u>Leavitt v. Corr. Med.
Servs.</u>, 645 F.3d 484, 497 (1st Cir.2011) (internal quotations
and citation omitted).  A serious medical need is one that
involves a substantial risk of serious harm to the prisoner if
it is not adequately treated, or if treatment is sufficiently
delayed.  <u>See</u> <u>id.</u>  The plaintiff must also demonstrate that the
defendant acted with deliberate indifference in failing to
provide adequate care to address plaintiff's serious medical
need.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).
"Deliberate indifference . . . may be shown by the denial of
needed care as punishment and by decisions about medical care
made recklessly with 'actual knowledge of impending harm, easily
preventable.'"  <u>Ruiz-Rosa v. Rullán</u>, 485 F.3d 150, 156 (1st Cir.

2007) (quoting <u>Watson v. Caton</u>, 984 F.2d 537, 540 (1st Cir. 1993)).

Here, while high blood pressure can be a serious medical condition, Hanson has not alleged that the temporary denial of Lisonopril put him at a substantial risk of serious harm. Hanson's blood pressure was checked regularly, he has alleged no ill effects resulting from the temporary discontinuation of the medication, and he himself declined to take the medication if he had to wake up early to do so.  Further, Hanson has not alleged any malnutrition or other harm resulted or was likely to result from the discontinuation of his multivitamin.  Because Hanson has not alleged facts sufficient to demonstrate that he was denied adequate care for high blood pressure, or that he suffered from, or was at significant risk of, any serious harm to his health, he cannot assert a claim for the unconstitutional deprivation of medical care.  The claim should therefore be dismissed from this action.

III. <u>New Claims</u>

    A.   <u>February 2012</u>

        1.   <u>Picture</u>

Hanson states that when RCHC C.O. McKinley was packing up Hanson's cell pursuant to a transfer to a different unit on February 22, 2012, a picture drawn by Hanson's son was either

lost or destroyed.  Hanson asserts this claim under state law
and cites no constitutional right violated by McKinley.  As no
federal question or other basis for this court's jurisdiction
over this action appears on the face of the complaint, the court
should dismiss this claim, without prejudice to Hanson raising
his state law claim in state court.

　　　　　　　　2.　　Visual Body Cavity Search

　　　　　　　　　　a.　　Facts

　　　　Hanson alleges that on February 22, 2012, Sgt. Eldridge
required him to submit to a visual body cavity search, wherein
he was required to lift his genitals and spread his buttocks.
The search occurred in the RCHC booking area after Hanson was
taken to a court hearing and then returned to the jail.
Eldridge threatened that Hanson would not be allowed to leave
the booking area, and would face disciplinary action, if he
failed to submit to the search.  Hanson asserts that during his
time away from the jail, he was under constant supervision.

　　　　　　　　　　b.　　Analysis

　　　　A search conducted pursuant to a jail's policy of
subjecting newly arrested pretrial detainees to visual body
cavity inspections prior to admitting them to the general
population, without consideration of individual circumstances,

does not violate the detainee's constitutional rights.  <u>See</u>
<u>Florence v. Bd. Of Chosen Freeholders</u>, 132 S. Ct. 1510, 1522-23
(2012).  The Supreme Court, in <u>Bell v. Wolfish</u>, 441 U.S. 520,
560 (1979), also upheld the routine practice of subjecting
pretrial detainees to reasonable, visual body cavity inspections
after all contact visits.

Here, Hanson's transport to court involved contacts that
implicate health and security concerns similar to those found to
be reasonably related to legitimate interests in <u>Florence</u> and
<u>Bell</u>.  This court should therefore dismiss Hanson's claim
asserting that the February 22, 2012, visual body cavity search
violated his Fourth Amendment rights.

    B.   <u>March 2012</u>

       1.   <u>Facts</u>

Hanson asserts that on March 13, 2012, RCHC C.O. Lennon,
while delivering mail to Hanson from the First Circuit, asked
Hanson how much money he was trying to get from Rockingham
County.  Lennon then stood with another inmate, and Hanson
alleges that the pair laughed at him.  Hanson asserts that he
called Lennon a "piece of shit," and that Lennon ordered him
locked in his cell.

Lennon later filed what Hanson characterizes as a false
disciplinary report against Hanson for disobeying a direct

order, and had Hanson transferred to the maximum security unit
at the prison.  Hanson alleges that maximum security is the most
dangerous unit at the RCHC, but does not allege that he suffered
any particular threat there.  When Hanson arrived at his new
cell, Hanson alleges that Lennon conducted a visual body cavity
search while "insulting and humiliating" Hanson.  Hanson asserts
that two other officers, Cpl. Bousley and Sgt. Warden, refused
to return Hanson to his previous housing unit, and that he never
received a hearing on his housing placement.

        2.   Claims

            a.   Verbal Harassment

    Hanson claims that all of Lennon's behavior on March 13,
2012, was the result of Lennon's efforts to harass Hanson.  To
the extent that Hanson alleges that Lennon's verbal inquiry
concerning Hanson's lawsuit, and his laughing at Hanson
constituted harassment, such a claim is not cognizable, as
verbal harassment of an inmate, however unprofessional or
inappropriate, does not, by itself, violate any constitutional
right.  See Shabazz v. Cole, 69 F. Supp. 2d 177, 200-01 (D. Mass
1999) (collecting cases) (without more, verbal harassment does
not violate inmate's rights under the Fourteenth Amendment); cf.
Skinner v. Cunningham, 430 F.3d 483, 489 (1st Cir. 2005)
(harassment including slamming of inmate's cell door, threats,

discourtesies, epithets, and false charges on petty matters do not violate Eighth Amendment).  Accordingly, Hanson's verbal harassment claim should be dismissed.

### b.   Housing

Hanson alleges that he was inappropriately transferred from a "protective custody" cell in RCHC's Unit 2B to a maximum security cell in the same unit for a false disciplinary report, which amounted to improperly punishing him for his underlying offense prior to his conviction.  Aside from simply being housed in a unit that he has alleged is generally more dangerous, Hanson does not allege that he suffered any harm or serious threat of harm, inhumane conditions of confinement, or the deprivation of any privilege or right he had prior to the transfer.

> Prior to an adjudication of guilt [] a state
> government may not punish a pretrial detainee without
> contravening the Fourteenth Amendment's Due Process
> Clause.  The government may, however, impose
> administrative restrictions and conditions upon a
> pretrial detainee that effectuate his detention, and
> that maintain security and order in the detention
> facility.  When confronted with a charge by a pretrial
> detainee alleging punishment without due process, the
> "court must decide whether the disability is imposed
> for the purpose of punishment or whether it is but an
> incident of some other legitimate governmental
> purpose."

O'Connor v. Huard, 117 F.3d 12, 16 (1st Cir. 1997) (citing and quoting Bell, 441 U.S. at 535-39); cf. Surprenant v. Rivas, 424

F.3d 5, 14 (1st Cir. 2005) (pretrial detainee moved from medium security to more restrictive "segregation and the attendant privations" on false disciplinary charges without a hearing stated a Fourteenth Amendment claim for improper punishment based on change in conditions).

Hanson baldly concludes that, because the disciplinary report was allegedly "false," his placement in maximum security necessarily amounts to punishment for his underlying offense. That conclusion, without more, does not suffice to state a claim for unreasonable punishment. Hanson has not alleged specific facts to demonstrate that he was subjected to unconstitutionally punitive conditions of confinement, and thus has failed to state a claim upon which relief might be granted. Accordingly, this claim should be dismissed.

c.  <u>Retaliation</u>

Hanson alleges that all of the poor treatment he received at the RCHC in March 2012 was the result of Lennon's, Bousley's, and Warden's retaliation against him for his lawsuit against the County. In order to state a claim for retaliation for the exercise of his First Amendment rights, Hanson must allege facts to demonstrate that: (1) the conduct which led to the alleged retaliation was protected by the First Amendment; (2) he was subjected to adverse action at the hands of prison officials;

and (3) there was a causal link between the exercise of Hanson's First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012).

Here, Hanson has failed to show that there was a causal connection between the filing of the lawsuit and the challenged conduct of the officers, sufficient to demonstrate that the officers' conduct was motivated by an intent to retaliate against Hanson for his lawsuit.  As to Bousley and Warden, Hanson has alleged no facts indicating that they were aware of the lawsuit.  Nor has he alleged any facts connecting his confinement in maximum security to an intent to retaliate.  As to Lennon, Hanson alleges that Lennon was aware of the lawsuit, and that he inquired as to how much money Hanson was trying to get.  Those facts, without more, do not allow the court to reasonably infer that Lennon's actions were retaliatory. Accordingly, Hanson has failed to state a retaliation claim against Lennon, Bousley, or Warden, and the retaliation claims should be dismissed from this action.

d.   Visual Body Cavity Search

Hanson alleges that the visual body cavity search conducted by Lennon violated his Fourth Amendment right not to be subjected to an unreasonable search.  To determine the

constitutionality of such a search, the court considers four factors: the scope of the intrusion, the manner in which the search is conducted, the justification for the search, and where the search was conducted.  See Bell, 441 U.S. at 559.

As to the first three factors, Hanson alleges that he was subjected to a visual body cavity search while Lennon insulted and humiliated him, in the context of a transfer within the jail, which, Hanson alleges, was based on a false disciplinary report.  Hanson also asserts that while conducting the search, Lennon made comments to the effect that Lennon could get around a lawsuit challenging the search.  As to where the search was conducted, Hanson has not alleged facts that would cause the court to reasonably infer that the search was conducted in any inappropriate, public place.

Crediting Hanson's assertions as true, he has asserted sufficient facts to support his contention that he was subjected to an invasive search that was conducted in an unreasonable manner.  While it may be that defendants will be able to show that Hanson's transfer to a more secure and restrictive unit in the jail justified the visual body cavity search, the facts, as alleged, assert a claim that the search was done in an effort to punish Hanson, rather than for a legitimate purpose.  Therefore, the court finds that Hanson has asserted the minimum facts

necessary to support a claim for relief, asserting a violation
of Hanson's right not to be unreasonably searched.  Accordingly,
in an order issued simultaneously with this report and
recommendation, the court has directed service of the claim on
Lennon.

e.   <u>State Law</u>

Hanson asserts state law tort claims arising out of the
facts asserted in his motion.  Specifically, Hanson seeks to
assert bodily injury claims pursuant to N.H. Rev. Stat. Ann.
("RSA") § 507-B:1,II, and claims for the infliction of emotional
distress.

The court may exercise supplemental jurisdiction over state
law claims pursuant, to 28 U.S.C. § 1367, where the claim is "so
related to claims in the action within [the court's] original
jurisdiction that they formed part of the same case or
controversy."  28 U.S.C. § 1367; <u>see also</u> <u>Carlsbad Tech., Inc.</u>
<u>v. HIF Bio, Inc.</u>, 556 U.S. 635, 640 (2009).  The court has found
only one actionable federal claim asserted in the instant
motion, relating to an allegedly unreasonable visual body cavity
search, and recommended the dismissal of all other claims of
federal constitutional violations asserted by Hanson.  The court
therefore should decline to exercise supplemental jurisdiction
and should dismiss any state law claims that do not relate to

15

the unreasonable search claim, as such claims present factual issues and questions of state law that would substantially predominate over the single remaining federal claim.  See 28 U.S.C. § 1367(c).

    As to the unreasonable search claim, Hanson does not allege that he suffered bodily injury as a result of the challenged search.  Accordingly, the state law claim for bodily injury should be dismissed from this action.

    To assert a claim for the intentional infliction of emotional distress, "plaintiff must allege that a defendant by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another."  Tessier v. Rockefeller, 162 N.H. 324, 341, 33 A.3d 1118, 1131 (2011) (alteration, internal quotation marks, and citation omitted). To assert a claim for the negligent infliction of emotional distress, a plaintiff must allege "'(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms.'" Id. at 1132 (citation omitted).

    Hanson has not stated any specific facts indicating that he suffered "severe emotional distress," mental or emotional harm, or any objective physical symptoms related to the March 13, 2012, search.  The state law tort claims asserting the

intentional and negligent infliction of emotional distress should therefore be dismissed.

### Conclusion

For the reasons discussed in this report and recommendation, the court recommends that the claims asserted and defendants named in the allegations set forth in the motion to amend and supplement the complaint (doc. no. 39) be dismissed, except for a Fourth Amendment claim relating to the visual body cavity inspection, asserted against C.O. Lennon, which has been ordered served in the order issued on this date. The court further recommends that all of the claims asserted, and defendants named, in the original complaint (doc. nos. 1 and 8), with the exception of the claim against Haseltine which has been served, be dismissed.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on

appeal).

_____
Landya McCafferty
United States Magistrate Judge


September 4, 2012

cc:  Michael Hanson, pro se
     Corey Belobrow, Esq.