UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Michael Hanson

    v.                                    Civil No. 11-cv-534-SM

George Haseltine
and Jay Lennon


**REPORT AND RECOMMENDATION**


Under the aegis of 42 U.S.C. § 1983, Michael Hanson, formerly a pre-trial detainee at the Rockingham County House of Corrections ("RCHC"), is suing RCHC correctional officers George Haseltine and Jay Lennon. He alleges that while he was incarcerated in the RCHC, those COs subjected him to bodily searches that violated his rights under the United States Constitution. Before me for a report and recommendation is defendants' motion for summary judgment. They argue that they are entitled to judgment as a matter of law because Hanson did not exhaust the administrative remedies available to him at the RCHC. Hanson has filed no objection. For the reasons that follow, I recommend that defendants' motion be granted.

**Summary Judgment Standard**

"Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.'" <u>McGair v. Am. Bankers Ins. Co.
of Fla.</u>, 693 F.3d 94, 99 (1st Cir. 2012) (quoting Fed. R. Civ.
P. 56(a); citing <u>Rosciti v. Ins. Co. of Penn.</u>, 659 F.3d 92, 96
(1st Cir. 2011)).  "In determining whether a genuine issue of
material fact exists, [the court] construe[s] the evidence in
the light most favorable to the non-moving party and make[s] all
reasonable inferences in that party's favor." <u>Markel Am. Ins.
Co. v. Díaz-Santiago</u>, 674 F.3d 21, 30 (1st Cir. 2011) (citing
<u>Flowers v. Fiore</u>, 359 F.3d 24, 29 (1st Cir. 2004)).

    "The object of summary judgment is to 'pierce the
boilerplate of the pleadings and assay the parties' proof in
order to determine whether trial is actually required.'" <u>Dávila
v. Corp. de P.R. para la Diffusión Pública</u>, 498 F.3d 9, 12 (1st
Cir. 2007) (quoting <u>Acosta v. Ames Dep't Stores, Inc.</u>, 386 F.3d
5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the
evidence and determine the truth of the matter but to determine
whether there is a genuine issue for trial." <u>Noonan v. Staples,
Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal
quotation marks omitted).

    "The nonmovant may defeat a summary judgment motion by
demonstrating, through submissions of evidentiary quality, that
a trialworthy issue persists." <u>Sánchez-Rodríguez v AT&T
Mobility P.R., Inc.</u>, 673 F.3d 1, 9 (1st Cir. 2012) (quoting
<u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006)).

That is, "the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his claim." Sánchez-Rodríguez, 673 F.3d at 9 (quoting Soto-Ocasio v. Fed. Ex. Corp., 150 F.3d 14, 18 (1st Cir. 1998)) (internal quotation marks omitted).

### Background

This action arises from CO Haseltine's strip search of Hanson on April 13, 2011 ("the 2011 search"), and CO Lennon's visual body-cavity inspection of Hanson on March 13, 2012 ("the 2012 inspection").  Hanson claims that the 2011 search was unjustified and that the 2012 inspection was conducted in an unreasonable manner.

Upon his admission to the RCHC on March 11, 2011, Hanson received a copy of the inmate handbook promulgated by the Rockingham County Department of Corrections ("DOC").  See Defs.' Mot. Summ. J., Church Decl. (doc. no. 65-2) ¶ 7; Church Decl., Attach. B (doc. no. 65-4).  Under the heading "Grievances," the handbook describes a two-step process that begins with an informal/oral grievance and then progresses to a formal/written grievance.  See doc. no. 65-6, at 18-19.

With respect to informal/oral grievances, the handbook provides in pertinent part:

> A.   Any grievance should first be brought to the attention of the Correctional Officer on duty.

    1.    If the Duty Officer is unable or unwilling
to assist in finding a remedy to your
problem, follow the Chain of Command.
(Corporal, Sergeant, Lieutenant)

    2.    If you are not satisfied with the solution
offered to you by the Lieutenant, you may
then write a grievance to the attention of
the Captain.

    . . . .

    4.    Detainees may present issues of concern
informally to any staff member at any time
within five days of the event that is
precipitating the grievance.

    5.    Incidents reported after five days will most
often be dismissed by the Lieutenant on
procedural grounds.  The Captain will
maintain a record of all formal Grievances.

    6.    Copies of Grievances filed by State, Federal
& INS Detainees will be maintained in the
Inmate File for three years.

Doc. no. 65-6, at 18.

With respect to formal/written grievances, the handbook

provides, in pertinent part:

    B.    All formal written grievances . . . must be sent
directly to the Captain.

        1.    Detainees may file a formal Grievance, no
later than five days after the event or
after the [u]nsuccessful conclusion of an
informal Grievance.

        . . . .

        3.    A Detainee Grievance Log will be maintained
by the Captain & a log number will be
assigned to track all formal & informal
written grievances.

4

    . . . .

    5.    Nuisance or petty grievances and grievances
         rejected on procedural grounds, e.g. filed
         after the [d]eadline or late will also be
         recorded in the Grievance Log.

Doc. no. 65-6, at 19.

Next, the handbook describes a process called "Grievance

Appeals," which includes the following:

Unsatisfactory Grievance decisions may be appealed to
the Assistant Superintendent and lastly to the
Superintendent in writing.  A request/grievance form
may be used or any available paper.

Doc. no. 65-6, at 20.[1]  Finally, under the heading "Grievance

Appeal Exceptions," item C provides that "[n]othing in this

policy prohibits any individual being detained, from writing to

other Public Officials, Courts, Attorney's [sic] or other

agencies outside the jail."  Id. at 21.

As noted, the two allegedly unconstitutional searches on

which Hanson bases his claims took place on April 13, 2011, and

March 13, 2012.  In a declaration, DOC Superintendent Stephen

---

    [1] While the handbook directs inmates to submit grievance
appeals to the Assistant Superintendent, the request/grievance
form it directs them to use contains check-boxes for
"Superintendent" and "Deputy Superintendent," but no box for
"Assistant Superintendent."  Thus, the court presumes that for
purposes of the grievance-appeal process, the titles "Assistant
Superintendent" and "Deputy Superintendent" refer to the same
DOC official.

Church characterized Hanson's utilization of the DOC grievance procedure in the following way:

> I have reviewed the DOC's records from Mr. Hanson's complete DOC file.  The records show that [Hanson] did not file a grievance against Officer Haseltine before November 16, 2011, which is the date I have been told [Hanson] filed this suit.
>
> [Hanson] first filed a grievance about the DOC's search policy in February of 2012.  A true copy of that grievance, and other documents related to this issue, [are] attached hereto as Attachment C.
>
> [Hanson]'s grievance in February 2012 did not raise any issues relating to Officers Haseltine and Lennon, or any other individuals.  Instead, his grievance complained that the DOC's policy itself was improper.

Church Decl. (doc. no. 65-2) ¶¶ 8-10.

The earliest document in Attachment C to Church's declaration is a grievance appeal dated February 29, 2012, which was more than three months after Hanson filed suit in this court to challenge the 2011 search.  In the routing section of the form he used to file his grievance appeal, Hanson checked the box labeled "Deputy Superintendent."  Substantively, he wrote:

> Lt. Horne's response to my grievance regarding the jail's strip-search policies is unsatisfactory.  I am requesting that the jail discontinue these practices because they are violative of inmates' Fourth Amendment right to be free from unreasonable search and seizure.  I would like to discuss this issue with someone from the administration ASAP, please.

Church Decl., Attach. C (doc. no. 65-5), at 2.  Two days later,

the Assistant Superintendent of the DOC, Major Blomeke, gave the

following response:

> As I mentioned this morning, please provide me with
> the specific violations of the Inmates' Fourth
> Amendment rights you feel are violated and I will get
> back to you.

Id.  Hanson then directed a second grievance appeal to the

Deputy Superintendent, in which he wrote:

> Requiring inmates to submit to warrantless visual body
> cavity searches without particularized reasonable
> suspicion to believe that individual inmates, or
> specific groups of inmates, are concealing weapons or
> contraband is unconstitutional, and the jail should
> abandon any such policies IMMEDIATELY.

Id. at 3.  Maj. Blomeke responded:

> I met with you on 3/2/12 to discuss your Grievance
> Appeal to Lt. Horne's response.  I asked for you to
> list specifics of any 4th Amendment violations.

Id.

Hanson continued the dialogue by writing a letter to Maj.

Blomeke, dated March 11, 2012, in which he stated, in pertinent

part:

> As I have provided you with the information you
> requested of me concerning specific violations of
> inmates' rights via this jail's strip search policies,
> I expect you to address this information directly.
> Failure to do so will be deemed a refusal to properly
> respond to my grievance appeal.
>
> I do not wish to play "word games," or any other
> type of games with the administration at this
> facility.  You will either respond appropriately to my

> grievances, or you will forfeit your ability to raise the affirmative defense of failure to exhaust.
>
> Furthermore, this process appears to be a mere formality, more geared towards helping jail officials identify and rectify constitutionally defective policies.  The inmate handbook that I was issued plainly states, on p. 20, at item "C," "Nothing in this policy [the grievance policy] prohibits any individual being detained from writing to other Public Officials, Courts, Attorney's [sic] or other agencies outside the jail."[2]

Church Decl., Attach. C. (doc. no. 65-5), at 4.  On March 22, Maj. Blomeke responded:

> I do not wish to play word games, or any other types of games.
>
> I reviewed your most recent correspondence and I have nothing that list[s] specific violations.  You make general comments about types of searches and their being unconstitutional.

Id. at 8.

Hanson immediately wrote back to Maj. Blomeke, stating, in pertinent part:

> It is my contention, and sincere belief, that the jail's strip search policies are themselves unconstitutional.  Therefore, every time an officer at this jail performs a strip search on a person without reasonable suspicion to believe that he or she is concealing weapons and/or contraband, that officer violates that person's Fourth Amendment right to be free from unreasonable search and seizure.
>
> Do you want specific incidents?

---

[2] It is not clear why Hanson cited item C, but to the extent he views the right to contact agencies and officials outside the jail as either excusing him from the DOC grievance procedure or abrogating the PLRA's exhaustion requirement, he is mistaken.

1. The time, on or about April 12, 2011, that officer Haseltine strip searched me when he returned me from the law library to my housing unit.

2. The time Officer Lennon (sp?) strip searched me after he lugged me for no good reason last Tuesday (3/13/2012).

Church Decl., Attach. C (doc. no. 65-5), at 9 (emphasis in the original).  The correspondence between Hanson and Maj. Blomeke concluded with the following note from Maj. Blomeke:

I do not agree with your argument regarding the searching procedures.  I do not feel they violate the Fourth Amendment.  This has been approved by various levels in the Court system.

Id. at 10.

Finally, Superintendent Church pointed out in his declaration that "[t]he [DOC inmate] [h]andbook notes that the final step in the grievance process is an appeal to the Superintendent," Church Decl. (doc. no. 65-2) ¶ 12, and he testified that Hanson "did not appeal to [him], as Superintendent, after receiving an unfavorable determination from Major Blomeke on his Grievance Appeal," id.

## Discussion

Based on the foregoing, defendants argue that they are entitled to summary judgment because Hanson failed to exhaust the administrative remedies available to him.  The court agrees. In the discussion that follows, the court begins by outlining

the relevant legal principles and then turns to each of Hanson's
two claims

A. Legal Principles

According to the Prison Litigation Reform Act ("PLRA"),
"[n]o action shall be brought with respect to prison conditions
under section 1983 of this title . . . by a prisoner confined in
any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted."  42
U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies
to all inmate suits about prison life, whether they involve
general circumstances or particular episodes, and whether they
allege excessive force or some other wrong."  Porter v. Nussle,
534 U.S. 516, 532 (2002) (citing Wilson v. Seiter, 501 U.S. 294,
299 n.1 (1991)).  Claims that have not been exhausted are
subject to dismissal.  See Medina-Claudio v. Rodríguez-Mateo,
292 F.3d 31, 36 (1st Cir. 2002).

Moreover, "the PLRA exhaustion requirement requires proper
exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  Proper
exhaustion, in turn, "demands compliance with [a penal
institution]'s deadlines and other critical procedural rules."
Id. at 90.  Thus, to meet the requirement of proper exhaustion,
"a prisoner must file complaints and appeals in the place, and
at the time, the prison's administrative rules require."  Acosta

v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006)
(quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir.
2002)).

"[F]ailure to exhaust is an affirmative defense under the
PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007). As such, it
"must be raised and proved by the defense." Cruz Berríos v.
Gonzáles-Roserio, 630 F.3d 7, 11 (1st Cir. 2010) (citing Jones,
549 U.S. at 216). That said, the final determination of
"[w]hether an inmate has [exhausted his administrative remedies]
presents a question of law, although the answer may depend on
disputed factual issues." Beltran v. O'Mara, 405 F. Supp. 2d
140, 149 (D.N.H. 2005) (citing Snider v. Melindez, 199 F.3d 108,
113 (2d Cir. 1999); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir.
2003)).

B. The 2011 Search

Hanson first claims that CO Haseltine violated his federal
constitutional rights by subjecting him to a strip search on
April 13, 2011, without adequate justification for such an
invasion of his privacy. Defendants argue that they are
entitled to summary judgment on that claim because: (1) when
Hanson filed that claim in this court, he had not even begun to
grieve the search on which it was based, which means,
necessarily, that he had not exhausted the administrative

11

remedies available to him; (2) Hanson never grieved the 2011
search at all but, rather, cited it as an example in support of
his actual grievance, which was a general challenge to the DOC's
strip-search policy; (3) even if Hanson did grieve the 2011
search, he did not do so in accordance with the procedure
described in the DOC inmate handbook;[3] and (4) Hanson did not
appeal the Assistant Superintendent's unsatisfactory decision to
the Superintendent, which means that he never fully exhausted
the administrative remedies available to him.  Defendants' first
and fourth arguments carry the day.

    With regard to defendants' first argument, the court of
appeals for this circuit has explained:

> [The] language [of 42 U.S.C. § 1997e(a)] clearly
> contemplates exhaustion prior to the commencement of
> the action as an indispensable requirement.
> Exhaustion subsequent to the filing of suit will not
> suffice.  Cf. Booth [v. Churner], 532 U.S. [731,] 738
> [(2001)] ("The 'available' 'remed[y]' must be
> 'exhausted' before a complaint under § 1983 may be
> entertained.") (emphasis added).

Medina-Claudio, 292 F.3d at 36 (emphasis in the original,

parallel citation omitted).

---

[3] Specifically, defendants argue that Hanson did not: (1)
bring his concerns about the 2011 search or the 2012 inspection
to the attention of the officer on duty; (2) take those issues
up through the chain of command; or (3) file written grievances
with the Captain on those issues.  See Defs.' Mem. of Law (doc.
no. 65-1), at 6.  The court further notes that the record
suggests that after he received an unsatisfactory response from
Lt. Horne, Hanson directed a grievance appeal to the Assistant
Superintendent, rather than directing a grievance to the
Captain, as required by the inmate handbook.

Hanson filed suit to challenge the constitutionality of the
2011 search on November 21, 2011.  It is undisputed that as of
that date, his DOC inmate file contained none of the following:
(1) a written grievance concerning the 2011 search directed to
the Captain, which is the final step in the resolution of
informal grievances and/or the first step in the resolution of
formal grievances; (2) a grievance appeal directed to the
Assistant Superintendent; and (3) a grievance appeal directed to
the Superintendent.  In fact, it is undisputed that Hanson never
formally brought his objection to CO Haseltine's 2011 search to
the attention of jail officials until four months after he filed
his claim in this court.  Because Hanson had not even begun to
grieve the 2011 search at the time he filed this suit, if,
indeed, he ever grieved that issue at all, his claim based on
that search is subject to dismissal, see Medina-Claudio, 292
F.3d at 36, which entitles defendants to summary judgment as to
that claim.

Moreover, even if there were some basis for excusing
Hanson's belated initiation of the grievance process, and
assuming for the sake of argument that the grievance appeals he
did file pertained to the 2011 search and were procedurally
proper, it is undisputed that Hanson never appealed the
Assistant Superintendent's unsatisfactory decision to the
Superintendent.  Such an appeal was, plainly, a remedy available

13

to Hanson, and defendants' demonstration that he failed to take advantage of that remedy satisfies their burden of proof on lack of exhaustion and entitles them to summary judgment on the claim arising from the 2011 search.

To be sure, Hanson filed two grievance appeals rather than just one.  But, on both forms, he checked the box directing those appeals to the Deputy Superintendent, and left blank the box that would have directed either of those appeals to the Superintendent.  Thus the second grievance appeal cannot reasonably be construed as an appeal to the Superintendent. And, while Hanson followed up on Maj. Blomeke's second unsatisfactory response by submitting two letters, both were addressed to Maj. Blomeke.  So, like the second grievance appeal, neither of Hanson's follow-up letters can be reasonably construed as an appeal to the Superintendent.  So, to restate, by failing to submit a grievance appeal to the Superintendent, Hanson failed to exhaust the administrative remedies available to him, which entitles defendants to judgment as a matter of law on the claim arising from the 2011 search.

C. The 2012 Inspection

Hanson next claims that CO Lennon violated his federal constitutional rights by subjecting him to a visual body-cavity inspection on March 13, 2012, that was conducted in an

unreasonable manner.  Defendants argue that they are entitled to
summary judgment on the claim arising from the 2012 inspection
because: (1) Hanson never grieved the 2012 inspection at all
but, rather, cited it as an example in support of his actual
grievance, which was a general challenge to the DOC strip-search
policy; (3) even if Hanson did grieve the 2012 inspection, he
did not do so in accordance with the procedure set out in the
DOC inmate handbook; and (3) Hanson did not appeal the Assistant
Superintendent's unsatisfactory decision to the Superintendent,
which means that he never fully exhausted the administrative
remedies available to him.  Hanson's failure to appeal the
Assistant Superintendent's decision to the Superintendent is
just as fatal to his claim based on the 2012 inspection as it is
to his claim based on the 2011 search.  Accordingly, defendants
are also entitled to summary judgment on the claim arising from
the 2012 inspection.

## Conclusion

For the reasons detailed above, I recommend that
defendants' motion for summary judgment, document no. 65, be
granted.

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the

specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

December 5, 2012

cc:  Michael Hanson, pro se
     Corey M. Belobrow, Esq.